**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GLEN R. WITHROW,               ) No. CV 13-1959-AS
                               )
                Plaintiff,     )
          v.                   ) **MEMORANDUM OPINION**
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of the     )
Social Security Administration,)
                               )
                Defendant.     )
_____)

**PROCEEDINGS**

On December 26, 2013, Plaintiff filed a Complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the Commissioner's denial of his application for supplemental social security income ("SSI"). (Docket Entry No. 3.)  On May 19, 2014, Defendant filed an Answer to the Complaint and the Certified Administrative Record ("A.R."). (Docket Entry Nos. 13, 14.)  The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 8, 10.)  On July 31, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on the two

1

issues relevant to the consideration of Plaintiff's claim. (Docket Entry No. 15.) The Court has taken the action under submission without oral argument. <u>See</u> C.D. Local R. 7—15; "Order re Procedures in Social Security Case" (Docket Entry No. 7).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff Glen R. Withrow ("Plaintiff"), a former Walmart employee and Taco Bell cashier, asserts disability beginning September 15, 2008, based on the following alleged physical and mental impairments: depression, anxiety, leg and back problems, and alleged that the onset date of these impairments was September 20, 2008. (A.R. 302, 322, 383.) On April 17, 2012, the Administrative Law Judge ("ALJ") examined the record and heard testimony from Plaintiff and a vocational expert. (A.R. 18.) Plaintiff testified that he hurt his leg while working at Walmart, and that he received treatment for his back pain and leg pain in conjunction with a worker's compensation case for that incident. (A.R. 120, 125.) On May 24, 2012, the ALJ issued a decision denying Plaintiff's application for SSI. (A.R. 15—36.)

The ALJ applied the five-step evaluation process to determine whether Plaintiff was disabled. (A.R. 19—30.) At step one, the ALJ determined that Plaintiff was not engaged in any "substantially gainful activity." (A.R. 20.) At step two, the ALJ found that Plaintiff suffers from the following medically determinable impairments: right knee and lumbar sprains/strains; patellofemoral chondromalacia of the right knee; depression; and anxiety. (<u>Id.</u>) At

step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal a medical listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 20.)

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] is able to stand for 6 hours, sit for 6 hours, and walk for 6 hours with the option to sit/stand at will. He should avoid climbing ladders, ropes, and scaffolds, but can occasionally engage in climbing balancing, stooping, kneeling, crouching, and crawling.  In addition, the claimant can occasionally utilize a cane for uneven surfaces.  He has pain in his back, leg, knee, and abdomen at a moderate level but is or can be controlled by appropriate medication or treatment without significant adverse side effects . . .  He would have moderate capability of completing an undisturbed normal workday.

(A.R. 22.)  The ALJ based the RFC finding in part on Plaintiff's "routine and conservative" treatment record rendered in connection with his worker's compensation claim for his knee injury.  (A.R. 23.)

At step four, the ALJ determined that Plaintiff was unable to return to his past work as a pizza maker/baker, lumberyard worker, stores laborer, or fast food worker.  (A.R. 29.)  The ALJ made this determination after comparing Plaintiff's RFC with the requirements of his past relevant work, and hearing testimony from a vocational expert.  (A.R. 29.)

At step five, the ALJ relied on the VE's testimony that Plaintiff could perform the following jobs identified in the

Dictionary of Occupational Titles ("DOT"): (1) cashier II, (2) garment bagger, (3) and production assembler (A.R. 29—30), along with Plaintiff's age, education, work experience, and RFC, to conclude that the "claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (See id.) Accordingly, the ALJ found that Plaintiff was "not disabled." (Id.)

On October 18, 2013, the Appeals Council denied review of the ALJ's decision. (A.R. 1—6.)

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Smolen, 80 F.3d at 1279. "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

"Social Security disability benefits claimants have the burden of proving disability." Bellamy v. Sec'y Health & Human Serv., 755 F.3d 1380, 1380 (9th Cir. 1985). A claimant is disabled if he has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, ALJs follow a five-step process set forth in 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proving steps one through four." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

At step one, the ALJ must determine whether or not the claimant is actually engaged in any "substantial gainful activity," as defined by 20 C.F.R. § 404.1572. If claimant is not so engaged, the evaluation continues to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimed physical or mental impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). When determining severity, "the ALJ must consider the combined effect of all of the claimant's impairments on [his or] her ability to function, without regard to whether each alone was sufficiently severe." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 42 U.S.C § 423(d)(2)(B)). Impairments are considered severe unless the evidence "establishes a slight abnormality that has 'no

more than a minimal effect on an individual's ability to work.'" <u>Id.</u> at 1290 (quoting <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988)). "[I]f the ALJ concludes that the claimant does have a medically severe impairment, the ALJ proceeds to the next step in the sequence." <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005); <u>See</u> 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the ALJ considers whether the claimant's severe impairments are disabling. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant is considered disabled if his purported conditions meet or are medically equivalent to a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). "[An] impairment is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. 404.1526. "Medical equivalence must be based on medical findings[]" rather than "[a] generalized assertion" or opinion testimony regarding "functional problems." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).

If the ALJ concludes that the claimant is not disabled at step three, the ALJ moves to step four and considers whether the claimant can return to his past relevant work. <u>Burch</u>, 400 F.3d at 679; <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iv). In order to do so, the ALJ determines claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is "what [claimant] can still do despite [claimant's] limitations," and is "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R.

6

416.945(a)(1).  If the claimant's RFC dictates that he can return to his past relevant work, he is not considered disabled.  <u>Burch</u>, 400 F.3d at 679.

If the claimant proves in step four that he cannot return to his past relevant work, the ALJ proceeds to step five.  20 C.F.R. § 404.1520(a)(4)(v).  At step five "the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." <u>Embrey v. Bowden</u>, 849 F.2d 418, 422 (9th Cir. 1988).  At this point, ALJs "can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." <u>Tackett</u>, 180 F.3d at 1101.  If the claimant does not have the RFC to work in any available jobs, he is considered disabled.  20 C.F.R. § 404.1520(a)(4)(v).

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ: (1) erred in relying on the VE's testimony because it purportedly conflicts with agency policy and responds to incomplete hypothetical questions; and (2) improperly assessed Plaintiff's ability to stand and walk.[1]

---

[1]  Although the Parties' Joint Stipulation also included a third claim – whether the ALJ properly considered the testimony of Plaintiff – the parties did not brief this issue.  <u>See</u> Joint Stip. (Docket Entry No. 15).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[2] legal error.

## A. Substantial Evidence Supports the ALJ's Conclusion Regarding Plaintiff's Ability to Stand and Walk

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285.

When a treating or examining doctor's opinion is not contradicted by some evidence in the record, it may be rejected only

---

[2] The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

for "clear and convincing reasons." See Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). Where, as here, a treating physician's opinion is controverted by other evidence, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to properly reject it. Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)); see also Orn, 495 F.3d at 632-33; Soc. Sec. Ruling 96-2p.

Plaintiff contends that the ALJ did not give specific and legitimate reasons for rejecting certain opinions of Plaintiff's consultative and treating physicians. (A.R. 18—19.) As set forth below, the Court does not agree.

Dr. Piasecki

Plaintiff purportedly sustained a knee injury at work in 1997 and was reinjured while working in 2008. (A.R. 492, 659.) In September 2009, Plaintiff's treating physician, Jack O. Piasecki, MD, prepared a "Permanent and Stationary Report" for Plaintiff's worker's compensation claim. (A.R. 688.) Dr. Piasecki diagnosed Plaintiff with musculoligamentous strain and sprain of the lumbar spine; musculoligamentous strain and sprain of the right button and posterior hamstrings; patellofemoral chondromalacia of the right knee; and depression. (A.R. 691.) Dr. Piasecki observed a marked right-sided limp using a cane, lumbar spine tenderness and spasm with movement, and an inability to independently stand on the right leg. (A.R. 690.) Dr. Piasecki also noted that Plaintiff's right knee was

stable, that he had a full range of motion in his knee, no effusion, and a negative McMurray's test.[3]   (A.R. 690.)   Thus, Dr. Piasecki opined that Plaintiff should avoid heavy lifting and climbing, and needed the option to sit and stand at will.  (A.R. 692.)

In October 2010, Dr. Piasecki performed a re-evaluation of Plaintiff and concluded that the diagnosis expressed in the September 2009 permanent and stationary report remained unchanged.  (A.R. 638, 640.)  An MRI scan of Plaintiff's right knee was completely normal. (A.R. 640.)

With respect to Dr. Piasecki's opinions, the ALJ stated the following:

> In the context of workers' compensation law, an opinion
> [that] a person is "permanent and stationary" means the
> person has reached a point of "maximum medical improvement"
> after receiving appropriate treatment.  This is not the
> same criteria used to determine disability under the Social
> Security Act.  Therefore, the conclusion by a physician
> that a claimant's condition is "permanent and stationary"
> in the context of a workers' compensation case is not
> relevant with regard to an application under the Social
> Security Act and therefore no weight is afforded.  Dr.
> Piasecki also opined the claimant was unable to perform his
> past relevant work in the fast food industry, which the
> undersigned notes is an issue reserved to the Commissioner
> (20 C.F.R. 416.1527(e)(1)).   Moreover, this physician
> asserted that claimant should avoid heavy lifting and
> climbing, and needed the option to sit and stand at will.
> Although the avoidance of heavy lifting is quite vague, it
> is emphasized that the restrictions indicated by Dr.

_____

[3] A McMurray's test is used to determine whether there is an inner meniscal tear.  See Meniscus Tears, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/001071.htm (last visited Dec. 29, 2014).

Piasecki are consistent with those determined in this decision.   Therefore partial weight is accorded.

(A.R. 26.)

Plaintiff contends that the ALJ failed to address Dr. Piasecki's opinion that Plaintiff was not able to stand on the right leg. (Joint Stip. 18.)   However, the ALJ properly noted that Dr. Piasecki's findings were based on the criteria used for evaluating a worker's compensation claim which differ from the criteria used for a finding of disability under the Social Security Act.. Rodriguez v. Colvin, No. ED CV 13-1199-SP, 2014 WL 2711800, at *6 (C.D. Cal. June 12, 2014); see also 20 C.F.R. § 404.1504.   Nevertheless, the ALJ accorded partial weight to Dr. Piasecki's lifting/climbing and sit/stand restrictions in determining Plaintiff's RFC.   (A.R. 26.)

The Court finds that the ALJ provided specific and legitimate reasons for partially discounting the opinions of Dr. Piasecki.

Dr. Baird

Robert Baird, M.D., an independent medical examiner for Plaintiff's worker's compensation case, examined Plaintiff in February 2009.   (A.R. 503—08.)   Dr. Baird diagnosed Plaintiff with probable sciatica of the right leg, bilateral lower extremity spasticity (right greater than left), and no appreciable right knee joint pathology.   (A.R. 506.)   Dr. Baird recommended that Plaintiff be restricted from "standing more than 15 minutes and walking more

than 10 minutes per hour," which he specified in a separate form as one hour of standing and one hour of walking in a workday.  (A.R. 507, 536.)   Dr. Baird evaluated Plaintiff's physical capacities in accordance with the Department of Labor Guidelines, and concluded the following:

> [Plaintiff] is able to sit for eight hours out of an eight-hour day, stand for brief periods only, walk for brief periods only, climb one flight of stairs occasionally, lift up to 10 pounds occasionally, carry up to 10 pounds occasionally, pull up to 25 pounds occasionally, and bend, squat, twist, and use upper extremities in an unrestricted fashion.

(A.R. 507.)   Dr. Baird stated that this qualified Plaintiff for sedentary work under the DOL guidelines.  (A.R. 507.)

The ALJ discounted Dr. Baird's assertions regarding Plaintiff's standing and walking limitations:

> The undersigned affords [Dr. Baird's] opinion partial weight because it is generally supported by the medical evidence of record and the opinions of other examining physicians.  However, some of Dr. Baird's assertions are somewhat vague and imprecise, such as the restriction of standing and walking for only brief periods.  Dr. Baird did not provide the number of hours the claimant could perform these tasks and therefore, Dr. Baird's assertions in this regard are without support and afforded little weight. Furthermore, the undersigned notes Dr. Baird's additional restrictions that the claimant could stand for 1 out of 8 hours, walk for 1 out of 8 hours, drive for 2 out of 8 hours remains unsupported by the evidence of record, including claimant's own statements.  Therefore, the standing and walking limitations are afforded little weight, and Dr. Baird's opinion on the whole is afforded partial weight.

(A.R. 24—25.)

An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion . . . is well-supported . . . and not inconsistent with the other substantial evidence in your case record, we will give it controlling weight"). Additionally, an ALJ may properly discount a treating physician's limitations as "not supported by any findings" where there is "no indication in the record what the basis for these restrictions might be." Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); see also 20 C.F.R. § 404.1527(c)(2); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation").

Here, the ALJ noted that Dr. Baird's objective findings fail to support his opinions regarding Plaintiff's standing and walking limitations. Although Plaintiff came to Dr. Baird's office with a history of significant knee pain, Dr. Baird found no evidence of an intrinsic knee joint injury. (A.R. 506.) Dr. Baird observed that Plaintiff's motor strength was 5/5 in all muscle groups of the

bilateral lower extremities. (A.R. 505.) Plaintiff's straight leg raise was positive at 55 to 60 degrees. (Id.) Dr. Baird noted that Plaintiff's lumbar spine flexion and extension was limited due to pain, but also stated that Plaintiff might benefit from over the counter analgesics or nonsteroidal anti-inflammatory drugs. (A.R. 507.) Additionally, although Plaintiff complained of difficulty with prolonged sitting, Dr. Baird noted that Plaintiff sat in an examination room for 20 to 30 minutes without getting up, moving around, or complaining of pain. (A.R. 507.) Thus, Dr. Baird's restrictions that Plaintiff could stand or walk for 1 out of 8 hours are not supported by his objective findings.

Accordingly, the ALJ provided specific and legitimate reasons for partially discounting the opinions of Dr. Baird.

Dr. Chung

In January 2011, Dr. Chung conducted an orthopedic consultation of Plaintiff at the request of the stage agency. (A.R. 700—05.) Dr. Chung observed tenderness and reduced range of motion in the lumbar spine. (A.R. 702—04.) Plaintiff was diagnosed with musculoligamentous strain of the lumbosacral spine and ligamentous strain of the right knee with probable chondromalacia of the right patella. (A.R. 704.) Dr. Chung opined that Plaintiff could stand and walk for four hours in an eight-hour day. (A.R. 704.) Dr. Chung also observed that Plaintiff had been using a cane for two years, but that he did not find any indication for use of the cane based on his examination. (A.R. 704.)

14

With respect to Dr. Chung's opinions, the ALJ found the following:

> This opinion is generally afforded great weight to the extent it is supported by the medical evidence of record and consistent with the residual functional capacity decision reached herein. The lifting limitations as outlined by Dr. Chung are consistent with the objective and clinical findings, as well as the opinions of other physicians. However, the undersigned finds that based on claimant's activities of daily living, he is able to stand and walk more than was generally outlined.

(A.R. 25.)

An inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion. <u>Ghanin v. Colvin</u>, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ noted that Plaintiff reported being able to care for his own personal hygiene, prepare simple meals, perform light household chores, use public transportation, and shop outside the home. (A.R. 23, 25, 28.) Moreover, just after the alleged onset date, the Plaintiff was noted to be walking 3 to 4 miles on a regular basis. (A.R. 28 (citing A.R. 626).) Thus, the ALJ properly concluded that these daily activities indicate that Plaintiff can stand and walk for longer periods that the opinion provided by Dr. Chung.

Thus, the Court finds that the ALJ provided specific and legitimate reasons for partially discounting Dr. Chung's opinion.

**B.**   **The ALJ Properly Relied on the VE's Testimony**

Plaintiff contends that the ALJ's reliance on the VE's testimony was misplaced because: (1) the hypothetical question posed to the VE failed to include all of Plaintiff's limitations, and (2) the VE's testimony was inconsistent with agency policy.  (A.R. 6—9.)

1.  The ALJ Posed Complete Hypotheticals to the Vocational Expert

A hypothetical question posed to a vocational expert must set out all the limitations and restrictions of the claimant.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original).  The hypothetical question must be accurate, detailed, and supported by the medical record.  Gamer v. Secretary of Health & Human Servs., 815 F.2d 1275, 1279-80 (9th Cir. 1987).  However, the ALJ is not required to include limitations in the hypothetical that are not supported by substantial evidence.  See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

The ALJ called Howard Goldfarb to testify as a vocational expert.  (A.R. 64.)   The ALJ then posed multiple hypothetical questions to the VE.  (A.R. 128—132.)   The first hypothetical included the following limitations: lift 20 pounds occasionally and 10 pounds frequently; carry, sit, stand and walk up to six hours during the day, with the ability to sit and stand at his option; occasionally climb, balance, stoop, kneel, crouch and crawl; occasional use of cane for uneven surfaces; slight pain in back,

knee, leg, and abdomen that can be controlled by appropriate medications without adverse side effects; sleep disturbance with slight impact; mood disorder causing mild limitations in attention, concentration, motivation, and memory; mild to moderate capability to carry out detailed instructions; mild capability to complete a normal workday; and mild capability to relate to the public, coworkers, and supervisors. (A.R. 128-29.) The VE testified that a hypothetical person with these limitations could perform various jobs available in the national economy, including that of a cashier II, production assembler, or garment bagger. (A.R. 130-31.)

The second hypothetical included all of the same limitations as the first hypothetical, except that the pain and psychiatric problems were moderate and would have a moderate effect on Plaintiff's ability to do basic work activities, but could still be controlled by appropriate medication without significant adverse side effects. (A.R. 131.) The VE testified that because the conditions could be controlled, his response would be the same as in the first hypothetical. (A.R. 131-32.)

The third hypothetical included all of the same limitations as the first hypothetical, except that the pain and the psychiatric problems were severe and could not be controlled by any medication, or the appropriate medication would markedly interfere with the person's ability to maintain pace and concentration. (A.R. 132.) The VE testified that there would be no jobs available in the local or national economy for this hypothetical person. (A.R. 132.)

Plaintiff contends that the ALJ failed to include a hypothetical with moderate and uncontrolled impairments in maintaining attention, concentration, motivation, memory, completing a normal workday, or interacting with the public, coworkers, or supervisors. (Joint Stip. 7—8.)  However, Plaintiff cites no evidence that his moderate limitations in these areas are uncontrolled.  As the ALJ noted, Plaintiff's mental health treatment consisted of Zoloft, which kept his mood stable and resulted in significant improvement. (A.R. 26, 509, 617—21.)  Moreover, the ALJ found that although Plaintiff was recommended to undergo psychological treatment, he attended only a few appointments from March through June 2010, and has not reengaged in any treatment. (A.R. 26.)

Even assuming Plaintiff's psychological impairments were moderate and uncontrolled, the VE *was* presented with an additional hypothetical by Plaintiff's attorney that included the consideration of moderate and uncontrolled impairments in addition to the same limitations as the first hypothetical. (A.R. 133.) The VE testified that although these limitations would preclude a person from performing skilled and semi-skilled work, these limitations would still permit the hypothetical individual to perform the unskilled work identified. (A.R. 133—34.) Thus, the hypotheticals presented to the VE considered all of Plaintiff's limitations that were supported by the record. <u>Thomas</u>, 278 F.3d at 956.

///

///

///

///

1    2.    <u>The VE's Testimony Does Not Conflict With Agency Policy</u>

2

3        Plaintiff also contends that the VE's testimony that a moderate
4    limitation in completing a normal workday would leave the unskilled
5    work base intact deviated from agency policy. (Joint Stip. 8.)
6    Plaintiff's argument is premised on the Social Security
7    Administration's Program Operations Manual System ("POMS"), an
8    internal agency document used by employees to process claims. POMS
9    imposes a strict requirement that all claimants must show the ability
10   to "complete a normal workday and workweek without interruptions from
11   psychologically based symptoms and perform at a consistent pace."
12   (Joint Stip. 10 (citing POMS DI 25020.010.B.3).)

13

14       POMS may be "entitled to respect" under <u>Skidmore v. Swift & Co.</u>,
15   323 U.S. 134 (1944), to the extent it provides a persuasive
16   interpretation of an ambiguous regulation, <u>see</u> <u>Christensen v. Harris</u>
17   <u>Cnty.</u>, 529 U.S. 576, 587–88 (2000), but it "does not impose
18   judicially enforceable duties on either this court or the ALJ."
19   <u>Lockwood v. Comm'r Soc. Sec. Admin.</u>, 616 F.3d 1068, 1073 (9th Cir.
20   2010); <u>see also</u> <u>Moore v. Apfel</u>, 216 F.3d 864, 868–69 (9th Cir. 2000)
21   (declining to review allegations of noncompliance with internal
22   agency manual because such a manual "does not carry the force and
23   effect of law.").

24

25       Even though POMS does not impose any judicially enforceable
26   duties on the SSA, "[t]he Code of Federal Regulations is clearly
27   binding upon the Commissioner." <u>Moore</u>, 216 F.3d at 869. The
28   regulations applicable here do not require a finding that a claimant

is disabled when the claimant exhibits a moderate limitation in the ability to complete a normal workday without interruption from psychologically-based symptoms. See 20 C.F.R. §§ 404.1520, 404.1520a; see also Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (holding that a diagnosis of "moderately significant forms of depression" and moderate limitations in the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms did not preclude a finding of nondisability); McLain v. Astrue, No. SA CV 10-1108 JC, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) ("[m]oderate mental functional limitations . . . are not *per se* disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"). Therefore, the VE's testimony does not conflict with agency policy.

Accordingly, the Court finds that the ALJ properly relied on the VE's testimony because the hypotheticals presented to the VE considered all of the claimant's limitations that were supported by the record. See Thomas, 278 F.3d at 956 (considering VE testimony reliable if the hypothetical posed includes all of claimant's functional limitations, both physical and mental supported by the record); Bayliss, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony").

///

///

///

///

**ORDER**

For all of the foregoing reasons, this Court affirms the decision of the Administrative Law Judge.


LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: January 5, 2015.


                              _____/s/_____
                              ALKA SAGAR
                              UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.   No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.